UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RESTAURANT
ASSOCIATION,

      Plaintiff,

 - against -

NEW YORK CITY BOARD OF HEALTH,
NEW YORK CITY DEPARTMENT OF HEALTH
AND MENTAL HYGIENE, and Thomas R. Frieden,
In His Official Capacity as Commissioner
of the New York State Department of Health
and Mental Hygiene,

      Defendants.

---

No. 2007 Civ. 07-CV-5710

COMPLAINT



JUDGE HOLWELL

RECEIVED JUN 15 2007 U.S.D.C. S.D.N.Y. CASHIERS

### Preliminary Statement

1. The New York State Restaurant Association (NYSRA) seeks declaratory and injunctive relief to prevent the enforcement of a newly promulgated regulation imposed by the Health Commissioner of the City of New York, New York City Health Code Section 81.50 ("Regulation 81.50"), which dictates how a small percentage of New York City restaurants must communicate nutrition information to the public. The regulation applies only to the small group of restaurants in New York City that have voluntarily decided to communicate nutrition information to their customers and the public. For these restaurants -- and only these restaurants -- the regulation requires that one part of the nutrition information (caloric count) be isolated and displayed in a precisely prescribed manner on menus and menu boards. But the Nutritional Labeling and Education Act of 1990, 21 U.S.C. § 301 *et seq.* (NLEA) and regulations promulgated thereunder by the Food and Drug Administration (FDA) expressly preempt state

1

laws like Regulation 81.50, in which a State or subdivision of a State "directly or indirectly" establishes any requirement respecting nutrition claims that is "not identical to" the requirements of federal law. The regulation also infringes on the First Amendment speech rights of those restaurants that come within its purview, and has already chilled the speech of several restaurants, having the perverse effect of silencing the voluntary disclosure of nutrition information.

2.  Through congressional legislation and FDA regulatory action, the federal government has made a determination that the effective communication by restaurants of nutrition information to consumers is a complex subject requiring flexibility; that there is no one "right way" to communicate this information; that restaurants should be permitted and encouraged to try different ways of doing so; and that they should not be burdened by specific requirements that would hinder experimentation.

3.  The Commissioner's regime takes a directly contrary approach. First, the Commissioner has chosen to impose his regime only on those restaurants which have voluntarily chosen to communicate truthful information to their customers and to the public. Thus, a restaurant that wants to avoid the burdens of the Commissioner's regime can do so only by ceasing to speak—that is, ceasing to provide nutritional information to customers (or by not beginning to do so).

4.  Second, for those restaurants that want to continue to exercise their right to communicate nutrition information, the Commissioner has required that information about calories be isolated from all other nutrition information and has mandated a particular and inflexible way that the information must be communicated to customers. A restaurant subject to the Commissioner's regime must post the calorie content of each menu item at a particular spot

2

in the restaurant and must do so in exactly the same size and typeface as the item name or price (whichever is larger), or be subject to a governmental sanction. Federal law imposes no such requirements. The Commissioner's regulation is thus "not identical to" the regulations promulgated under the NLEA, and in fact, contravenes the entire statutory and regulatory scheme. Thus, the regulation is expressly preempted and unenforceable under the Supremacy Clause of the United States Constitution.

5. The Commissioner's inflexible regime also impermissibly burdens NYSRA members' First Amendment rights by forcing them to choose between ceasing to speak or providing nutrition information in a manner that they believe is incomplete and therefore inaccurate.

6. To protect NYSRA members' First Amendment rights, and to prevent the Commissioner from imposing a regime preempted by the NLEA and regulations promulgated thereunder, plaintiff seeks a declaration that the regulation is invalid, and an injunction barring defendants from enforcing the regulation against any NYSRA member.

## JURISDICTION

7. Because this action arises under the Constitution and laws of the United States, this Court has jurisdiction under 28 U.S.C. § 1331.

8. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 to redress deprivations under color of any State law, statute, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States.

9. Venue in the United States District Court for the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(3) because defendants reside within the State of New York and at least one of them resides within this judicial district. Venue is also proper

under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

10.     Plaintiff, the New York State Restaurant Association, is a not-for-profit business association for the New York State restaurant and food service industry. The Association has over 7,000 members, and nearly 1,000 of its members are located in New York City. Certain NYSRA members have elected to publish nutrient content of their menu items to customers, and therefore will be subject to Regulation 81.50. Other members published nutrition information about their products prior to March 1, 2007, but ceased to do so as of that date in order to avoid the strictures of the regulation. And still others would subject themselves to the City's regime if they ultimately chose to publish this information in the future.

11.     Defendant New York City Board of Health ("Board of Health") is responsible for promulgating the New York City Health Code. *See* New York City Charter § 558. Pursuant to its powers, the Board of Health adopted Regulation 81.50, and will have responsibility for its enforcement. *See id.;* Notice of Adoption of An Amendment (81.50) to Article 81 of the New York City Health Code (Dec. 5, 2006) ("Notice of Adoption").

12.     Defendant Department of Health and Mental Hygiene of the City of New York ("Department of Health") regulates all matters and enforces all laws related to the care, promotion and protection of public health in the City of New York. *See* New York City Charter § 556. The Department of Health will be responsible for enforcement of Regulation 81.50 if it is allowed to take effect. *See* Notice of Adoption.

13.     Defendant Thomas R. Frieden is sued in his official capacity as the Commissioner of the Department of Health. As Commissioner of the Department, Defendant Frieden is

4

responsible for the enforcement of the New York City Health Code, as well as all provisions of law governing public health issues in New York City. *See* New York City Charter §§ 551, 555, 556. In particular, Defendant Frieden has the authority and the duty to ensure that Regulation 81.50 is enforced. *See* Notice of Adoption.

## BACKGROUND

14. Under the NLEA, restaurants are generally exempted from the mandatory labeling requirements that apply to packaged foods. However, restaurants that voluntarily provide nutrition information to the public are required under the NLEA to comply with FDA regulations governing the provision of such information. 21 U.S.C. § 343(r)(2)(A).

15. Based on studies that it and others have conducted, the FDA concluded that it was premature to draw firm conclusions about the effectiveness, if any, of any particular method of communicating nutrient information in restaurants, and that restaurants should be given leeway and encouragement to experiment with providing such information in different formats. Thus, FDA regulations expressly grant restaurants broad discretion in choosing a format for the presentation of whatever nutrition information they choose to provide. 21 C.F.R. § 101.10. Specifically, Section 101.10 of the FDA's regulations allows restaurants to present nutrition information "in various forms, including those provided in § 101.45 [allowing a wide range of formats, including signs, charts, brochures, posters, leaflets,, videos and other media] *and other reasonable means.*" (Emphasis supplied.)

16. This flexibility is essential to the FDA's regulatory scheme, which seeks to secure the availability of accurate and complete information about the nutritional content of restaurant food without making the requirements for disclosure so onerous as to dissuade restaurants from making any nutritional claims whatsoever.

17. In accordance with the discretion granted under the NLEA and accompanying regulations, NYSRA members that have elected to provide nutritional information to their customers have done so using a variety of formats, including in-store brochures, websites, in-store posters, toll free numbers, tray liners, and food packaging.

18. Such restaurants have sought to give customers access to complete nutrient information in a user-friendly format that emphasizes the importance of a well balanced diet and a healthy lifestyle. Consistent with the prevailing view among public health experts that obesity is the result of several factors acting together over time, and that proper consumer education is essential, restaurants have avoided overemphasizing the importance of any one nutrient, such as calories, to an overall, well-balanced diet, and have focused instead on providing consumers with a balanced presentation of all relevant nutrition information, including fat, sodium, calories, carbohydrates, cholesterol, protein, vitamins and minerals. Additionally, their nutrition presentations have included contributing causes of obesity other than food, such as a sedentary lifestyle.

19. On December 5, 2006, the Department of Health announced the adoption of Regulation 81.50, which provides that all restaurants that voluntarily provide calorie content information to customers as of March 1, 2007, must "post on menu boards and menus the calorie content values (in kcal) . . . for each menu item" by July 1, 2007. 24 RCNY Health Code § 81.50(a)-(b).

20. Regulation 81.50 applies only to those restaurants with "menu items that are served in portions the size and content of which are standardized and for which calorie content information is made publicly available on or after March 1, 2007. . . ." *Id.* § 81.50. By the Commissioner's own estimate, only ten percent of New York City restaurants will be subject to

6

the regulation, because the vast majority of restaurants in New York City, and elsewhere, do not provide nutrient information to customers. *See* Notice of Adoption.

21. The regulation further dictates the manner in which caloric information is to be communicated. The regulation provides that "[t]he term 'calories' or 'cal' shall appear as a heading above a column listing the calorie content value of each menu item, or adjacent to the calorie content value for each menu item, in the same or larger typeface as the calorie content values for individual menu items." 24 RCNY Health Code § 81.50(b)(1).

22. The regulation even mandates the size and typeface that the restaurant must use to present the caloric value of an item. Regulation 81.50 requires that in the case of menu boards, "calorie content values . . . be posted in a size and typeface at least as large as the name of the menu item or price, whichever is larger." *Id.* § 81.50(b)(1)(A). In the case of printed menus, the regulation requires that "calorie content values . . . be legible and . . . printed in a size and typeface at least as large as the name or price of the menu item." *Id.* § 81.50(b)(1)(B).

23. Regulation 81.50 thus requires restaurants to isolate caloric content from the body of nutrition information required to make informed dietary choices, including the fat, saturated fat, cholesterol, sodium, carbohydrate, fiber, protein, vitamin and mineral content of a given menu item. It severely limits restaurants' freedom in communicating nutrition information to their customers. By forcing restaurants to display and focus only on caloric information, the regulation compels restaurants to convey a nutrition message that they believe is incomplete and with which they do not agree, namely that calorie information is the only relevant nutrition criterion to consider when making food selections.

24. Limiting the nutrient information on menu boards to calories only as a guideline to the healthfulness of a particular food is misleading. Some higher calorie foods have more nutritional value than some lower calorie foods.

25. By imposing a rigid regime governing how restaurants must communicate nutritional information to customers, Regulation 81.50 contravenes the approach taken by Congress, the FDA, and prevailing public health opinion.

26. Regulation 81.50 also imposes significant economic injury on the restaurants it governs. NYSRA members will incur added costs in complying with the regulation. Addition of calorie count information will increase the amount of text on the menu boards. In order to fit the new information, the font size of the item name and price in all likelihood would have to be reduced. The required changes will make the menus and menu boards more cluttered and harder to read, which will confuse and frustrate customers standing in line to place their orders. This frustration and confusion will cause delays in ordering, and will potentially drive customers to restaurants that choose *not* to disclose any nutrition information at all.

27. Regulation 81.50 provides that "[s]ubject to prior approval by the Department, food service establishments may use alternative means for making calorie information available to patrons, provided such information is made available at the point of purchase and is at least as prominent as [otherwise] required" by the law. *Id.* § 81.50(b).

28. In light of this provision, since January 2007, some member restaurants that will be adversely effected by the regulation have submitted to the Department of Health proposals for reasonable, alternative means of communicating nutrition information to their customers at the point-of-purchase. Some restaurants have submitted more than one proposal to the

Department of Health, in the hopes of finding an alternative presentation that would be acceptable to the Department.

29. The Department of Health has rejected virtually all such proposals.

30. A number of member restaurants chose to avoid the burdens imposed by Regulation 81.50 by withdrawing nutrition information they previously made available to customers. Other members which do not presently make nutrition information available have been discouraged from beginning to do so.

## FIRST CAUSE OF ACTION

(Federal Preemption)

31. Plaintiff realleges each and every allegation contained in paragraphs 1 through 30 herein.

32. The Supremacy Clause (Article VI) of the United States Constitution states that The "Laws of the United States which shall be made in Pursuance [to the Constitution] . . . shall be the supreme Law of the Land . . . ." When there is a conflict between a state law and federal law, the federal law preempts the state law.

33. The NLEA provides that any food labeling requirement imposed by a State or political subdivision of a State that is not "identical to" the requirement contained in the statute is preempted. 21 U.S.C. § 343-1(a)(5). Specifically, the NLEA states: "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce any requirement respecting any claim of the type described in section 343(r)(1) of this title [*i.e.*, nutrition claims] made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under [a section of the

9

statute dealing with claims concerning cholesterol, saturated fat, dietary fiber, and nutrients that increase the risk of disease, not relevant here]." *Id.*

34. The labeling requirements contained in Regulation 81.50 are not "identical to" the requirements in the NLEA. Regulation 81.50 requires that information about calories be isolated from all other nutrition information, that it be posted in a particular spot at the restaurant -- the menu or menu board -- , and that it be presented in the same size and typeface as the item name or price (whichever is larger). The NLEA does not contain any of these requirements. Therefore, Regulation 81.50 is not "identical to" the requirements in the NLEA and is preempted.

35. The NLEA also impliedly preempts Regulation 81.50. Federal labeling rules were designed to encourage restaurants to communicate nutrition information about their menu items by granting them freedom to decide how to communicate such information. This is national policy set by Congress and implemented by the FDA. Regulation 81.50, by limiting the freedom of those New York City restaurants that choose to provide consumers with nutrition information, and by dissuading others not to provide nutrition information at all, impedes the full accomplishment and execution of the objectives and purposes of the NLEA.

36. As a nutrient labeling requirement inconsistent with both the language and purpose of the NLEA and its regulations, Regulation 81.50 is preempted under the Supremacy Clause of the United States Constitution.

## SECOND CAUSE OF ACTION

(First Amendment)

37. Plaintiff realleges each and every allegation contained in paragraphs 1 through 36 herein.

10

38. The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." In protecting the autonomy of every speaker to choose the content of his message, the First Amendment — applied to the States by incorporation into the Fourteenth Amendment — guarantees both the right to speak and the right not to speak. The commercial nature of speech does not deprive it of these guarantees.

39. By requiring restaurants who otherwise publish nutrition information to place caloric data on their menus and menu boards, Regulation 81.50 burdens the exercise of protected speech. It also compels restaurants to convey a message with which they do not agree: namely, that the nutritional value of a given menu item can be represented by a bare declaration of its caloric content. And it has chilled the exercise by some restaurants of their rights of speech by discouraging them from communicating nutrition information which they would otherwise do in the absence of the regulation.

40. The Department of Health is unable to demonstrate that Regulation 81.50 is narrowly drawn to advance its asserted interest in reducing the incidence of obesity in New York City. Absent this demonstration, the Department of Health's substantial infringement of member restaurants' constitutional rights is impermissible.

41. Accordingly, Regulation 81.50 violates member restaurants' right to freedom of speech guaranteed by the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment.

42. Plaintiff has no remedy at law for such deprivation of its rights.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment against defendants on each and every cause of action:

11

1. Declaring that Regulation 81.50, being inconsistent with federal labeling laws, is preempted under the Supremacy Clause of the United States Constitution and, therefore, of no force;

2. Declaring that Regulation 81.50 denies plaintiff's member restaurants the right to freedom of speech and thereby violates the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment;

3. Preliminarily and permanently enjoining defendants from enforcing Regulation 81.50;

4. Awarding plaintiff damages to be proved at trial pursuant to 42 U.S.C. § 1983, and its costs and expenses, including reasonable attorneys' fees as permitted by 42 U.S.C. § 1988, necessarily incurred in connection with this action; and

5. Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       June 14, 2007

Respectfully submitted,

**Arnold & Porter LLP**

By: _____
Peter L. Zimroth (PZ1029)
Kent A. Yalowitz (KY3234)
Nancy G. Milburn (NM9691)
399 Park Avenue
New York, New York 10022
(212) 715-1000

Attorneys for Plaintiff,
New York State Restaurant Association