**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  | : |  |
| --- | --- | --- |
| **NEW YORK STATE RESTAURANT** | : | |
| **ASSOCIATION,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | **No. 07 CIV 5710 (RJH)** |
| | : | |
| **NEW YORK CITY BOARD OF HEALTH,** | : | |
| **NEW  YORK CITY DEPARTMENT OF HEALTH** | : | |
| **AND MENTAL HYGIENE, and Thomas R. Frieden,** | : | |
| **In His Official Capacity as Commissioner** | : | |
| **Of the New York State Department of Health** | : | |
| **And Mental Hygiene,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

### BRIEF OF JENNIFER L. POMERANZ OF THE RUDD CENTER FOR FOOD POLICY AND OBESITY AT YALE UNIVERSITY AND ROBERT POST OF YALE LAW SCHOOL AND KELLY D. BROWNELL OF THE RUDD CENTER FOR FOOD POLICY AND OBESITY AT YALE UNIVERSITY AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS

Dated: July 9, 2007

Respectfully submitted,

Attorney for Amicus Curiae:

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Amicus Curiae:
Jennifer L. Pomeranz (not admitted in S.D.N.Y)
Kelly D. Brownell (not an attorney)
The Rudd Center For Food Policy & Obesity
Yale University

Robert Post (not admitted in S.D.N.Y.)
Yale Law School

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.   STATEMENT OF INTEREST OF *AMICI CURIAE* .................................................1

II.  BACKGROUND ......................................................................................2

III. ARGUMENT ..........................................................................................5

      A.  Commercial Disclosure Requirements Are Routine...................................5

      B.  The First Amendment Standard for Commercial Disclosure
          Requirements is the Reasonable Relationship Test ..................................7

      C.  New York City Health Code §81.50 Meets the Reasonable
          Relationship Test ...................................................................10

      D.  The Case of *United Foods* is Inapplicable to New York City Health
          Code §81.50 ........................................................................13

      E.  The Chilling Doctrine is Not at Issue.. ...................................................17

IV.  CONCLUSION.......................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)……………………………………………………...........................7

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996)……………………………………………………………………….9

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 524 (2001)……………………………………………………………………...18

*National Electrical Manufacturers Association v. Sorrell et al.*,
272 F.3d 104 (2d Cir. 2001)…………………………………………….....…6, 7, 8, 9, 10, 15, 16

*Pharmaceutical Care Management Association v. Rowe*,
429 F.3d 294 (1st Cir. 2005)……………………………………………………………..15

*Riley et al. v. National Federation of the Blind of North Carolina, Inc. et al.*,
487 U.S. 781 (1988)…………………………………………………………………17, 18

*United States Department of Agriculture v. United Foods*,
533 U.S. 405 (2001)……………………………………………………………...8, 14, 15, 16

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council*,
425 U.S. 748 (1976)……………………………………………………………...7, 8, 18

*Wells Fargo Bank Northwest, N.A. v. TACA Intern. Airlines, S.A.*,
314 F. Supp. 2d 195 (S.D.N.Y. 2003)…………………………………………………….8

*Wooley v. Maynard*,
430 U.S. 705 (1977)…………………………………………………………………16-17

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
471 U.S. 626 (1985)……………………………………...…………7, 8, 9, 10, 11, 14, 15, 16, 17, 19

## Statutes and Regulations

2 U.S.C. § 434………………………………………………………………………….6
15 U.S.C. § 68, et seq…………………………………………………………………...5
15 U.S.C. § 70, et seq…………………………………………………………………...5
15 U.S.C. § 78l ………………………………………………………………………….6
15 U.S.C. § 1333 ……………………………………………………………………….6
21 U.S.C. § 205(e)(2)…………………………………………………………………...5

21 U.S.C. § 343, et seq.………………………………...……………………………5, 6
33 U.S.C. § 1318………………………………………………………………………...6
42 U.S.C. § 11023…………………………………………………………………………6
21 C.F.R. § 202.1…………………………………………………………………………6
29 C.F.R. § 1910.1200……………………………………………………………………6
Cal. Health & Safety Code § 25249.6 "Proposition 65"…………………………………6
N.Y. Agric. & Mkts. Law 214-h……………………………………………………...…5
N.Y. Envtl. Conserv. Law § 33-0707……………………………………...……………6

## Miscellaneous

AMA House of Delegates, *Nutrition Labeling and Nutritionally Improved Menu Offerings in Fast-Food and Other Chain Restaurants*, Resolution: 419 (A-07)………………….……11, 12, 13

Backstrand J, Wootan MG, Young LR, Hurley J. *Fat Chance*, Washington, DC: Center for Science in the Public Interest, 1997……………………………………………………..….4, 11

Burton S, Creyer EH, Kees J, Huggins K. *Attacking the obesity epidemic: the potential health benefits of providing nutrition information in restaurants*. American Journal of Public Health. 2006; 96:1669-1675……………………………………………….………..……3, 4, 11

Food and Drug Administration. *Counting Calories, Report of the Working Group on Obesity*, FDA, Center for Food Safety and Applied Nutrition (2004)…………………....…………12, 13

Levy AS. Derby BM. *The Impact of NLEA on Consumers: Recent Findings from FDA's Food Label and Nutrition Tracking System*. Washington DC: Center for Food Safety and Applied Nutrition. Food and Drug Administration. 1996………………………………...……………3, 11

Institute of Medicine. *Preventing childhood obesity health in the balance*, National Academies Press, Washington DC (2005)………………………………………………...………13, 14

Post, Robert. *The Constitutional Status of Commercial Speech*, 48 U.C.L.A. L. Rev. 1 (2000)……………………………………………………………………………….…9, 18

Post, Robert. *Transparent and Efficient Markets: Compelled Commercial Speech and Coerced Commercial Association in United Foods, Zauderer, and Abood*, 40 Val. U. L. Rev. 555 (2006)…………………………………………………………………………….…..6

Surgeon General. *Call to Action to Prevent and Decrease Overweight and Obesity*. U.S. Department of Health and Human Services, Public Health Service, Office of the Surgeon General, Rockville MD (2001)…………………………………………………………..…12

US Department of Health and Human Services, Centers for Disease Control and Prevention, National Center for Health Statistics. *Healthy People 2000 Final Review*. 2001……………...…3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| NEW YORK STATE RESTAURANT ASSOCIATION, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | No. 07 CIV 5710 (RJH) |
| | : | |
| NEW YORK CITY BOARD OF HEALTH, | : | |
| NEW YORK CITY DEPARTMENT OF HEALTH | : | |
| AND MENTAL HYGIENE, and Thomas R. Frieden, | : | |
| In His Official Capacity as Commissioner | : | |
| Of the New York State Department of Health | : | |
| And Mental Hygiene, | : | |
| | : | |
| Defendants. | : | |

_____ :

**BRIEF OF JENNIFER L. POMERANZ OF THE RUDD CENTER
FOR FOOD POLICY AND OBESITY AT YALE UNIVERSITY AND
ROBERT POST OF YALE LAW SCHOOL AND KELLY D. BROWNELL
OF THE RUDD CENTER FOR FOOD POLICY AND OBESITY AT YALE
UNIVERSITY AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS**

Jennifer L. Pomeranz of the Rudd Center for Food Policy and Obesity at Yale University,

Robert Post of Yale University Law School, and Kelly D. Brownell of the Rudd Center for Food

Policy and Obesity at Yale University ("Rudd Center") submit this brief in support of defendants

New York City Board of Health, New York City Department of Health and Mental Hygiene, and

Thomas R. Frieden ("New York City") and against plaintiff's Motion for Declaratory Relief and

a Preliminary Injunction.

I. **STATEMENT OF INTEREST**

Jennifer L. Pomeranz, J.D., M.P.H. is the Coordinator of Legal Initiatives at the Rudd

Center and Kelly D. Brownell, Ph.D. is the Director of the Rudd Center. The Rudd Center's

mission is to improve the world's diet, prevent obesity, and reduce weight stigma by establishing connections between sound science and public policy, developing targeted research and expressing a dedicated commitment to real change. The Rudd Center strives to improve practices and policies related to nutrition and obesity so as to inform and empower the public, to promote objective, science-based approaches to policy, and to maximize the impact on public health. Robert Post, J.D., Ph.D. is the David Boies Professor of Law at Yale Law School. He focuses his teaching and writing on constitutional law and is a specialist in First Amendment jurisprudence and constitutional law. New York City's adoption of Health Code §81.50 "Calorie Labeling" directly furthers the Rudd Center's goals. We write separately on the First Amendment issues.

The obesity epidemic is a public health crisis in the United States. New York City is addressing the epidemic by requiring food service establishments to post on menus and menu boards the calorie content of food and beverages they offer. Based on the best scientific evidence available and the recommendations of public health experts, the Rudd Center supports New York City's regulation as it has supported menu labeling legislations in cities and states across the country. The United States Surgeon General, the Institute of Medicine, the United States Food and Drug Administration ("FDA"), and the American Medical Association ("AMA") have all advocated for increased nutrition information for food and beverages offered for purchase in food service establishments ("restaurants").

## II. <u>BACKGROUND</u>

In New York City, more than half of adults are overweight (34.9%) or obese (19.9%). *See* Declaration of Thomas R. Frieden, at ¶ 3. In 2005, 71.4% of all deaths in New York City were due to diseases highly correlated with obesity: heart disease, diabetes, stroke and cancer.

*See id*., at ¶ 6.  In an effort to address these public health issues, New York City adopted Amendment §81.50 Calorie Labeling to Article 81 of the New York City Health Code on December 5, 2006 ("Health Code §81.50").  Through this regulation, the City mandates that food service establishments "post on menu boards and menus the calorie content values" that have been made publicly available on or after March 1, 2007, "for each menu item next to the listing of each menu item." *See* Notice of Adoption of an Amendment (§81.50) to Article 81 of the New York City Health Code (December 5, 2006) ("Notice of Adoption"), at 4.

Health Code §81.50 advances New York City's interest in reducing obesity by promoting informed consumer decision-making and preventing consumer confusion.  New York City found that the regulation would "allow individuals to make more informed choices that can decrease their risk for the negative health effects of overweight and obesity associated with excessive calorie intake." *Id*. at 1.  Sound scientific evidence strongly supports this rationale.  Studies show that consumers routinely consult food labels[1] and that as a result they change their food purchasing habits.[2]  In a recent study consumers presented with calorie content on the menu chose high-calorie items one-third less frequently.[3]

Health Code §81.50 seeks to improve public health by preventing potential consumer confusion.  There is consensus within the public health community that consumers are unable to correctly estimate the calorie content of foods and beverages, particularly at restaurants.  Studies have found that 9 out of 10 people underestimate the calorie content of less-healthy items by an

---

[1] US Department of Health and Human Services (US DHHS), Centers for Disease Control and Prevention, National Center for Health Statistics. *Healthy People 2000 Final Review.* 2001.
[2] Levy AS. Derby BM. The Impact of NLEA on Consumers: Recent Findings from FDA's Food Label and Nutrition Tracking System. Washington DC: Center for Food Safety and Applied Nutrition. Food and Drug Administration. 1996.
[3] Burton S, Creyer EH, Kees J, Huggins K. Attacking the obesity epidemic: the potential health benefits of providing nutrition information in restaurants. Am J Public Health. 2006; 96:1669-1675.

average of more than 600 calories (almost 50% less than the actual calorie content).[4]  One survey performed at the American Dietetic Association's annual meeting shows that even professional nutritionists underestimate the calorie content of restaurant foods by 220 to 680 calories.[5]

New York City's disclosure requirement implements sound public policy reflecting information the public health community has known for years.  Consumers are entitled to know the calorie composition of their foods and beverages, but they cannot guess this nutritional data for themselves.  Health Code §81.50 provide this information to consumers in a manner that public health professionals regard as most effective in promoting informed consumer decision-making and preventing consumer confusion. The regulation imposes only a minimal burden on restaurants, because it requires disclosure of information already provided by restaurants to the public.  The regulation merely requires that this information be disclosed in the most effective way- at the point of purchase.  Similar disclosure requirements are common in federal and state regulatory programs designed to promote consumer information and prevent potential consumer confusion.  In doing so, these requirements establish efficiency and transparency in the commercial marketplace.  Health Code §81.50 will contribute to the prevention of obesity and its related diseases by assisting New York City residents to make choices based on easily accessible and readily understandable calorie information.

Plaintiff argues that Health Code §81.50 compels and burdens speech in violation of the First Amendment of the United States Constitution.  *See* Memorandum of Law in Support of Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction ("Plaintiff's Memo").  If plaintiff's argument is accepted, innumerable federal and state regulations requiring consumer

---

[4] Burton S, Creyer EH, Kees J, Huggins K. Attacking the obesity epidemic: the potential health benefits of providing nutrition information in restaurants. Am J Public Health. 2006; 96:1669-1675.
[5] Backstrand J, Wootan MG, Young LR, Hurley J. *Fat Chance*, Washington, DC: Center for Science in the Public Interest, 1997.

disclosure will be thrown into jeopardy. The government's ability to address the obesity epidemic through regulations promoting informed consumer choice and personal responsibility would be derailed. The scientific consensus on this issue has led 6 cities and 14 states to introduce legislation similar to New York's and is the reason the Rudd Center has a strong history of supporting menu labeling legislation requiring restaurants to disclose factually accurate calorie data on their menu at the point of purchase.

## III.  ARGUMENT

### A.  Commercial Disclosure Requirements Are Routine

Plaintiff's First Amendment arguments are extreme. Commercial disclosure regulations are a routinely applied to transactions in the current marketplace. If promoting the circulation of accurate factual commercial information in order to inform consumers and prevent confusion were constitutionally questionable, huge swaths of ordinary consumer protection legislation would be rendered constitutionally suspect. Purveyors of food items must presently make available to consumers a wide range of information, standardized for easy comparison, about everything from the ingredients contained in the product, 21 U.S.C. §343(i), to the net weight of the contents, 21 U.S.C. §343(e), to the unit-price of the product, N.Y. Agric. & Mkts. Law 214-h (McKinney 2007). Beverage containers must state the percentage of alcohol by volume. *See* 21 U.S.C. § 205(e)(2). Similarly, laws enforced by the Federal Trade Commission require that most textile and wool products have labels listing: fiber content, country of origin, and the identity of the manufacturer or another business responsible for marketing or handling the item. *See* the Textile Fiber Products Identification Act, 15 U.S.C. § 70, et seq., and the Wool Products Labeling Act of 1939 (Wool Act), 15 U.S.C. § 68, et seq.

Plaintiff's argument is so excessive that it would undermine the very FDA disclosure requirements (21 U.S.C. §343 et seq.) to which plaintiff otherwise appeals in its argument for preemption.

The Second Circuit has specifically rejected plaintiff's argument that compelled disclosure of accurate commercial information in the marketplace is constitutional questionable:

> Innumerable federal and state regulatory programs require the disclosure of product and other commercial information. See, e.g., 2 U.S.C. § 434 (reporting of federal election campaign contributions); 15 U.S.C. § 78l (securities disclosures); 15 U.S.C. § 1333 (tobacco labeling); 21 U.S.C. § 343(q)(1) (nutritional labeling); 33 U.S.C. § 1318 (reporting of pollutant concentrations in discharges to water); 42 U.S.C. § 11023 (reporting of releases of toxic substances); 21 C.F.R. § 202.1 (disclosures in prescription drug advertisements); 29 C.F.R. § 1910.1200 (posting notification of workplace hazards); Cal. Health & Safety Code § 25249.6 ("Proposition 65"; warning of potential exposure to certain hazardous substances); N.Y. Envtl. Conserv. Law § 33-0707 (disclosure of pesticide formulas).

*National Electrical Manufacturers Association v. Sorrell et al.*, 272 F.3d 104, 116 (2d Cir. 2001); *see also*, Robert Post, *Transparent and Efficient Markets: Compelled Commercial Speech and Coerced Commercial Association in United Foods, Zauderer, and Abood*, 40 Val. U. L. Rev. 555, 584-585 (2006) ("commercial speech is routinely and pervasively compelled … to reduce information costs and thereby to establish a more educated and efficient marketplace.").

In the context of commercial speech, the goal of the First Amendment is to promote the circulation of accurate information, in part so that consumers can make decisions that are better informed. *See Sorrell*, 272 F.3d at 114. Consumer disclosure requirements like Health Code §81.50 serve this goal by increasing the accurate factual information available to consumers. To strike down Health Code §81.50 would render constitutionally suspect the entire system of consumer protection in the United States.

**B.  The First Amendment Standard for Commercial Disclosure Requirements is the Reasonable Relationship Test**

Plaintiff's extreme argument misunderstands the basic constitutional law of commercial speech, and it is especially misleading with regard to the First Amendment standards applicable to commercial disclosure requirements.  The First Amendment guarantees protection to both commercial and noncommercial speech.  *See Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976).  However, the Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563 (1980); *see also, National Electrical Manufacturers Association v. Sorrell et al.*, 272 F.3d 104, 113 (2d Cir. 2001) ("Commercial speech is subject to 'less stringent constitutional requirements' than other forms of speech.").   Although the general standard for restrictions on commercial speech is the test set forth in *Central Hudson,*  447 U.S. at 566, "regulations that compel 'purely factual and uncontroversial' commercial speech are subject to more lenient review than regulations that restrict accurate commercial speech." *Sorrell*, 272 F.3d at 113 (*quoting Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 6510 (1985)).

The United States Supreme Court explicitly addressed this question in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 6510 (1985)).  *Zauderer* holds that in the context of commercial speech compelled disclosure requirements of purely factual information are constitutional if they bear a reasonable relationship to an appropriate state interest.   471 U.S. at 651.   Indeed, *Zauderer* explicitly states that a commercial speaker's "constitutionally protected interest in *not* providing any particular factual information … is minimal."  *Zauderer*, 471 U.S. 651 (emphasis in the original).  The standard of *Zauderer* has been applied to compelled disclosure requirements implemented "to better inform consumers

about the products they purchase" and to those "intended to prevent consumer confusion or deception."  *Sorrell*, 272 F.3d at 115.

In *Zauderer*, the Court considered a state requirement that attorney advertisements for contingent-fee representation must disclose "whether percentages are computed before or after deduction of court costs and expenses."  471 U.S. at 633.  The Ohio Office of Disciplinary Counsel filed a complaint against an attorney for, among other things, not complying with this disclosure requirement.  Defendant argued that the disclosure requirement should be analyzed under an intermediate First Amendment standard, but the Court disagreed:

> The State has attempted only to prescribe what shall be orthodox in commercial advertising, and its prescription has taken the form of a requirement that appellant include in his advertising purely factual and uncontroversial information about the terms under which his services will be available.  Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, see *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal.

*Id.* at 651 (emphasis in original).  The Court explained that such compelled disclosure requirements are constitutional if they are reasonably related to the state's interest.  *Id.* The state's interest in the *Zauderer* case was "preventing deception of consumers."  The Court found that this interest was reasonably related to its requirement that attorneys include factual information associated with contingent-fee representation in their advertisements.  *Id.*

The Second Circuit case of *Sorrell* applied the reasonable relationship test set forth in *Zauderer* to a disclosure requirement analogous to the one at issue here.[6]  In *Sorrell*, the

---

[6] The Second Circuit decided *Sorrell* on November 6, 2001, which was over four months after the Supreme Court case of *United States Department of Agriculture v. United Foods*, 533 U.S. 405 (June 25, 2001), not "a few weeks" later, as misrepresented by plaintiff.  *See* Plaintiff's Memo at 23 n.6.  As such, it is binding on this Court.  *See Wells Fargo Bank Northwest, N.A. v. TACA Intern. Airlines, S.A.*, 314 F. Supp. 2d 195, 198 (S.D.N.Y. 2003) ("It is not for this Court to overrule binding Second Circuit precedent.").

legislature of Vermont enacted a statute requiring manufacturers of some mercury-containing products to label their products and packaging to inform consumers of their mercury content. Vermont's goal was to reduce mercury contamination. 272 F.3d at 107. The National Electrical Manufacturers Association, on behalf of its lamp-manufacturer members, sued the state defendants to enjoin the enforcement of the regulation on the theory that it violated their First Amendment rights by compelling commercial speech. The Second Circuit found that the "compelled disclosure" of "purely factual and uncontroversial commercial speech" is "governed by the reasonable-relationship rule in Zauderer." *Id*. at 113, 116. The Court explained the justification for reasonable relationship test:

> Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests. Such disclosure furthers, rather than hinders, the First Amendment goal of the discovery of truth and contributes to the efficiency of the "marketplace of ideas." … In such a case, then, less exacting scrutiny is required than where truthful, nonmisleading commercial speech is restricted.

*Sorrell*, 272 F.3d at 114-115 (*citing*, 44  *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501, 134 L. Ed. 2d 711, 116 S. Ct. 1495 (1996); *Zauderer*, 471 U.S. at 650-51; Robert Post, *The Constitutional Status of Commercial Speech*, 48 U.C.L.A. L. Rev. 1, 28 (2000)) (footnote omitted). Applying the reasonable relationship test, the Second Circuit found that the disclosure requirement was reasonably related to the state's interest in informing consumers of products' contents so as to reduce mercury pollution. It specifically noted that to hold otherwise "would expose the[] long-established [regulatory] programs, [discussed *infra* at IIIA,] to searching scrutiny by unelected courts. Such a result is neither wise nor constitutionally required." *Id*. 272 F.3d at 116.

Like the commercial disclosure requirements upheld in *Zauderer* and *Sorrell*, New York City Health Code §81.50 requires the disclosure of accurate commercial information to promote informed consumer decision-making and minimize potential consumer confusion. Section 81.50 requires that "Food service establishments shall post on menu boards and menus the calorie content values (in kcal) that have been made publicly available as specified in subdivision (a) for each menu item next to the listing of each menu item." Notice of Adoption at 4. The calorie content of food and beverage items is the type of uncontroversial factual information that was at issue in *Zauderer* and *Sorrell*.

### C. New York City Health Code §81.50 Meets the Reasonable Relationship Test

Mandated disclosure of the calorie content of menu items is reasonably related to the City's objective of decreasing "the negative health effects of overweight and obesity associated with excessive calorie intake," *see* Notice of Adoption at 3, by promoting informed consumer decision-making[7] and preventing potential consumer confusion.[8]

Like the disclosure requirement in *Sorrell*, 272 F.3d at 115, Health Code §81.50 mandates disclosure in order to "better inform consumers about the products they purchase." It

---

[7] The Notice of Adoption aptly states:

> By requiring posting of available information concerning restaurant menu item calorie content, so that such information is accessible at the time of ordering, this Health Code amendment will allow individuals to make more informed choices that can decrease their risk for the negative health effects of overweight and obesity associated with excessive calorie intake….Without calorie information, it is difficult for consumers to compare options and make informed decisions.

Notice of Adoption at 1-2.

[8] The Notice of Adoption explains:

> People do not accurately guess the calorie content of foods and beverages, and calorie information will help guide food choices. Recent studies found that 9 out of 10 people underestimated the calorie content of less-healthy items by an average of more than 600 calories (almost 50% less than the actual calorie content). When calorie information was provided on food items, consumers chose high-calorie items 24% to 37% less often. … When consumers are made aware of nutrition information at the point of purchase, disease risk perceptions increase, attitudes toward the product change, and purchasing intentions for unhealthy products decrease.

Notice of Adoption at 2.

is reasonable for New York City to expect that better informed consumers will eat in a healthier fashion.  At a minimum, consumers will now have this option.  There is scientific evidence that labels on packaged food are associated with healthier eating.  *See* AMA House of Delegates, *Nutrition Labeling and Nutritionally Improved Menu Offerings in Fast-Food and Other Chain Restaurants*, Resolution: 419 (A-07) ("AMA Resolution") at 1; *see also*, n.2 and n.3, *infra*.  New York reasonably believes that mandating calorie content information at the point of purchase of restaurant menu items will similarly encourage healthier eating.  Labeling menu items will create conditions that make it easier for consumers to select healthy options.

The implementation of Health Code §81.50 is also necessary to prevent "consumer confusion." *Zauderer*.  471 U.S. at 651.  Not only do scientific studies show that average consumers are oblivious to, and incorrectly estimate, the calorie content of food and beverages they purchase, but a survey of professional nutritionists reveals very similar confusion and inaccuracies.  *See* Backstrand J, at n.5, *infra*; *see also*, AMA Resolution at 1 ("Consumers, and even nutrition professionals, are not able to accurately estimate the caloric content of restaurant foods, and studies have found that the provision of nutrition information for away-from-home foods can have a positive influence on food- purchase decisions.").

Large portion sizes at restaurants make it especially difficult for consumers to know what is in their foods. In 1955 a serving of fries at McDonald's was 2.4 oz that contained 210 calories; today's 6 oz serving has 570 calories. Servings of steak today are 224% larger than what the USDA defines as a serving and cookies are 7 times as large as a USDA serving. Consumers are attracted to large portions in part by pricing strategies. A 2002 report from the National Alliance for Nutrition and Activity found that upsizing from a smaller to larger size of French fries at McDonald's gave the consumer 157% more fries for only a 62% increase in cost.  Because there

is a strong tendency for consumers to eat what they are served and because the size of these "servings" had increased dramatically, it is to be expected that consumers cannot accurately assess the calorie content of their foods and beverages. Calorie information at the point of purchase is thus "appropriately" required "to dissipate the possibility of consumer confusion." *Zauderer*, 471 U.S. at 651.

New York City's strategy to combat obesity by focusing on calories reflects sound judgment. This is because, as the FDA's Working Group on Obesity stated:

> Fundamentally, obesity represents an imbalance between energy intake (e.g., calorie intake) and energy output.... Although there is much discussion about (1) the appropriate makeup of the diet in terms of relative proportions of macronutrients (fats [lipids], carbohydrates, and protein) that provide calories and (2) the foods that provide these macronutrients, for maintenance of a healthy body weight it is the consumption and expenditure of calories that is most important. In other words, "calories count."

*Counting Calories, Report of the Working Group on Obesity*, FDA, Center for Food Safety and Applied Nutrition (March 12, 2004) ("Counting Calories") at 3. The FDA concluded that "a focus on total calories is the most useful single piece of information in relation to managing weight." *Id*. at 24. The AMA agreed that "at a minimum, calories [should be labeled] on menu boards, since they have limited space." AMA Resolution at 2.

Health Code §81.50 is thus reasonably related to the New York's interest in reducing obesity by promoting informed consumer decision-making and preventing potential consumer confusion. This is why the leading public authorities in the United States have all advocated increased disclosure of nutrition information for food and beverages purchased in restaurants. The Surgeon General's *Call to Action to Prevent and Decrease Overweight and Obesity* recommended "increasing the availability of nutrition information for foods eaten and prepared away from home." U.S. Department of Health and Human Services, Public Health Service,

Office of the Surgeon General, Rockville MD (2001).  The Institute of Medicine likewise recommended that, "[f]ull-service and fast food restaurants should expand healthier food options and provide calorie content and general nutrition information at point of purchase."  Institute of Medicine, *Preventing childhood obesity health in the balance*, National Academies Press, Washington DC (2005) ("IOM, *Preventing childhood obesity*") at 165-166 ("full-service and fast food restaurant industries should provide general nutrition information that will facilitate consumers' informed decisions about food and meal selections and appropriate portion sizes").  The FDA's Working Group on Obesity explained that "the pervasiveness of the obesity epidemic means that more nutrition information must be presented to consumers in restaurant settings." *Counting Calories* at 24.  The FDA recommended "standardized, simple, and understandable nutritional information, including calorie information, at the point-of-sale in a restaurant setting." *Id*.  Finally, the AMA's Resolution of 2007 stated that "our American Medical Association support federal, state, and local policies to require fast-food and other chain restaurants … to provide consumers with nutrition information on menus and menu boards."  AMA Resolution at 2.

There is virtual unanimity among the nation's medical and public health organizations on the need to combat obesity by requiring the effective communication of factual nutritional information, and especially calorie information, for food consumed away from home.

### D.  The Case of *United Foods* is Inapplicable to New York City Health Code §81.50

Plaintiff characterizes New York City Health Code §81.50 as requiring restaurants "to voice a point of view with which they disagree." It alleges that the posting of calories compels restaurants to express the "point of view that calories are the only nutritional criterion that patrons need to consider when making food selections."  Plaintiff's Memo at 21.  For this reason,

plaintiff argues, Health Code §81.50 should be analyzed under the principles set forth in *United States Department of Agriculture v. United Foods*, 533 U.S. 405 (2001), in contrast to the standard of *Zauderer*. Plaintiff's Memo at 21-22.

Plaintiff's argument is flatly incorrect. *United Foods* is inapplicable to the present case because Health Code §81.50 does not require restaurants to express a point of view. Health Code §81.50 requires only the disclosure of simple factual information. A calorie is "a unit of measure for energy obtained from food and beverages." IOM, *Preventing childhood obesity*, at 332. There is nothing subjective or ideological about disclosing the calorie composition of a food or beverage.

If restaurants have the point of view that additional nutritional information is important for consumers to receive at the point of purchase, Health Code §81.50 leaves them free to communicate this viewpoint and to provide whatever additional data they wish to their customers. The ordinance does not *prevent* restaurants from listing more nutritional information than caloric content. The ordinance simply sets a minimum floor for restaurant disclosure.

To the extent plaintiff's position can be read to allege that New York City's plan to "highlight" caloric content of foods and beverages is constitutionally suspect because it is under-inclusive, *see* Plaintiff Memo at 24, 3-4, *Zauderer* holds directly to the contrary: "[W]e are unpersuaded by appellant's argument that a disclosure requirement is subject to attack if it is 'under-inclusive' -- that is, if it does not get at all facets of the problem it is designed to ameliorate. As a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied." 471 U.S. at 651.

Plaintiff's argument that the mandated disclosure of accurate commercial information to promote informed consumer decision-making should be controlled by the principles of *United Foods* rather than *Zauderer* directly contravenes governing precedent in the Second Circuit. In *Sorrell* the Court of Appeals concluded that the reasonable relationship test should apply to requirements that mandate the disclosure of factual commercial information in order to promote informed consumer decision-making. Plaintiff's argument was expressly rejected by the Second Circuit in *Sorrell*. *See Sorrell*, 272 F.3d at 115-116. The Second Circuit stated:

> To be sure, the compelled disclosure at issue here was not intended to prevent "consumer confusion or deception" per se, Zauderer, 471 U.S. at 651 (internal quotation marks omitted), but rather to better inform consumers about the products they purchase. … Accordingly, we cannot say that the statute's goal is inconsistent with the policies underlying First Amendment protection of commercial speech, described above, and the reasons supporting the distinction between compelled and restricted commercial speech. We therefore find that it is governed by the reasonable-relationship rule in Zauderer.

*Sorrell*, 272 F.3d at 115; *accord, Pharmaceutical Care Management Association v. Rowe*, 429 F.3d 294, 310 n.8 (1st Cir. 2005) ("PCMA states that the holding in *Zauderer* is 'limited to potentially deceptive advertising directed at consumers.'… we have found no cases limiting *Zauderer* in such a way."). In this case, moreover, New York City has mandated the disclosure of accurate commercial information not merely to promote informed consumer decision-making, but also to prevent potential consumer confusion. This is precisely the interest served by the disclosure requirements at issue in *Zauderer*.

*United Foods* is distinguishable on both the facts and the law. *United Foods* involved a Congressional act establishing the Mushroom Council and authorizing it "to impose mandatory assessments upon handlers of fresh mushrooms" for certain projects; however, "most monies raised by the assessments [were] spent for generic advertising to promote mushroom sales." 533

U.S. at 443.  One large handler of fresh mushrooms challenged these assessments, contending the "forced subsidy for generic advertising" violated its First Amendment rights.  *Id*. at 444.  The Court agreed that the First Amendment was implicated because the handler wanted to "convey the message that its brand of mushrooms [were] superior to those grown by other producers" and it objected "to being charged for a message … that mushrooms are worth consuming whether or not they are branded."  *Id*. at 445.  The Court found that the "mandated assessments for speech" were the "principal object of the regulatory scheme," and as such, they violated the handler's First Amendment right not to be compelled to support speech with which it disagreed.  *Id*. at 445-446.

Unlike the advertising scheme at issue in *United Foods*, Health Code §81.50 does not require association between or among restaurants, nor does it mandate assessments of monies for advertising, nor does it mandate that restaurants advertise or speak a certain message.  On the contrary, the objective of the New York City regulation is to inform consumers of the caloric content of the menu items by requiring this data be listed at the point of purchase.  Calories are "purely factual and uncontroversial" facts regarding the composition of foods and beverages sold at a particular restaurant. The placement of this disclosure at the point of purchase does not force restaurants to convey an ideological message.  *See Sorrell* 272 F.3d at 113.  In *United Foods* the federal government did not have an interest, as does New York in this case, in preventing potential consumer confusion.   Plaintiff's interest in not informing its customers of the calorie content of its products at the point of purchase is minimal, *see Zauderer* at 651, and only subject to the reasonable relationship test of *Zauderer*.[9]

---

[9]  Plaintiff's invocation of *Wooley v. Maynard*, 430 U.S. 705 (1977), defies all Supreme Court precedent on the subject of commercial speech.  *See* Plaintiff's Memo at 23.  In *Zauderer*, the Court dismissed the commercial actor's appeal to *Wooley* by stating that the State "has not attempted to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.'"  471

Finally, plaintiff argues that Health Code §81.50 requires restaurants "to convey information that the owner does not want to convey on the menu." Plaintiff's Memo at 24. But the ordinance applies only to restaurants which have already made this information public through media outlets outside the point of purchase. Plaintiff's Memo at 21. Health Code §81.50 thus does not present the question of *whether* a restaurant should convey this information; at most it presents the question of *how* this information should be conveyed by a restaurant. Leading public authorities in the United States agree that point of purchase disclosures are more effective in promoting informed consumer decision-making and preventing potential consumer confusion. *See infra* III C. New York's determination that disclosure should occur at the point-of-purchase is therefore reasonable. In *Zauderer* the Court flatly rejected the "contention" that a disclosure requirement "must be struck down if there are other means by which the State's purpose may be served." 471 U.S. at 651 n.14. Thus even if restaurants have devised one mode to communicate its calorie information to the public, New York is not precluded from prescribing the means it deems best to serve the pressing public purpose of addressing the epidemic of obesity.

### E.  The Chilling Doctrine Is Not At Issue

Relying on *Riley et al. v. National Federation of the Blind of North Carolina, Inc. et al.*, 487 U.S. 781 (1988), plaintiff argues that because New York City Health Code §81.50 "applies only to restaurants that already provide calorie information," the regulation "chills disclosure." Plaintiff's Memo at 24. This argument misunderstands *Riley,* which held that state regulations

---

U.S. at 651. Likewise, New York City is not prescribing this type of noncommercial speech to offend the First Amendment's stricter test. As in *Zauderer*, the government "has attempted only to prescribe what shall be orthodox in commercial [matters], and its prescription has taken the form of a requirement that [restaurants] include … purely factual and uncontroversial information" at the point of purchase. *Id.*

that chill ordinary public discourse must be carefully analyzed under the First Amendment.[10]
Health Code §81.50 does not chill non-commercial speech, nor does plaintiff contend that it
does.  At most plaintiff argues that "[s]ome restaurants have already withdrawn their disclosures
rather than comply with the Regulation."  Plaintiff's Memo at 24.  These disclosures concern
commercial speech rather than non-commercial speech.

Plaintiff's argument that Health Code §81.50 should be subject to strict First Amendment
review because it chills commercial speech is flawed factually and legally.  It is flawed factually
because Health Code §81.50 applies only to restaurants that have made "nutritional information
publicly available on or after March 1, 2007."  Notice of Adoption at 4.  Restaurants that have
withdrawn their nutrition information since March 1, 2007 cannot evade the disclosure
requirements of §81.50.  It is wrong legally because the Supreme Court has made it clear that
"commercial speech may be more durable than other kinds.  Since advertising is the sine qua non
of commercial profits, there is little likelihood of its being chilled by proper regulation and
forgone entirely."  *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. at
772, n.24; *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 524, 573, (2001), Thomas, J.,
(concurring in part and concurring in the judgment) ("In explaining the distinction between
commercial speech and other forms of speech, we have emphasized that commercial speech is
both 'more easily verifiable by its disseminator' and less likely to be 'chilled by proper
regulation.'"); *see also* Robert Post, The Constitutional Status of Commercial Speech, 48
U.C.L.A. L. Rev. 1, 31-32 (2000).  At most the Court has said that "unjustified or unduly
burdensome disclosure requirements might offend the First Amendment by chilling protected

---

[10] *Riley* applied the strict scrutiny test of the First Amendment to the fee "scheme" portion of a State Act governing
the solicitation of charitable contributions by professional fundraisers.

commercial speech." *Zauderer*, 471 U.S. at 651.  But Health Code §81.50 is neither unjustified nor unduly burdensome.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, we urge the Court to find for defendants and dismiss plaintiff's motion for declaratory relief and a preliminary injunction.


Dated: July 9, 2007


Respectfully submitted,

Attorney for Amicus Curiae:

<u>/s/ Brian L. Bromberg</u>
Brian L. Bromberg (BB: 6264)
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906


Amicus Curiae:

Jennifer L. Pomeranz, J.D., M.P.H.          Robert Post, J.D., Ph.D.
Coordinator of Legal Initiatives            David Boies Professor of Law
The Rudd Center For Food Policy & Obesity   Yale Law School
Yale University                             P.O. Box  208215
309 Edwards Street                          New Haven, CT 06520
New Haven, CT 06520                         (203) 432-4992
(203) 432-6700


Kelly D. Brownell, Ph.D.
Director
The Rudd Center For Food Policy & Obesity
Yale University
309 Edwards Street
New Haven, CT 06520
(203) 432-6700

## Certificate of Service

I, Brian Bromberg, an attorney, hereby certify that on July 9, 2007, the foregoing

document was filed with the Clerk of the Court and served in accordance with the Federal Rules

of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's

Rules on Electronic Service upon the following parties and participants:

Nancy Gordon Milburn, Esq.

Kent A. Yalowitz, Esq.

Peter L. Zimroth, Esq.

Louise Althea Moed, Esq.

Mark W. Muschenheim, Esq.

Dated: New York, New York
     July 9, 2007

                    /s/ Brian L. Bromberg
                        Brian L. Bromberg

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005